**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

PNC BANK, N.A.,

        Plaintiff,

v.                                          Case No: 6:13-cv-652-Orl-28KRS

NALID PROPERTIES LLC, ANTONIO L.
ROMANO, GREGORY A. WRIGHT,
LIDIA ROMANO, and NANCY WRIGHT,

        Defendants.
_____

# ORDER

Invoking this Court's diversity jurisdiction, PNC Bank, N.A., filed this action against Antonio L. Romano, Gregory A. Wright, Lidia Romano, Nancy Wright, and Nalid Properties, LLC. The case arises from a loan made by PNC to Nalid that was guaranteed by the individual Defendants, and PNC has now moved for summary judgment.[1] Having considered the parties' submissions, the Court concludes that PNC's motion must be granted.

**I.   Background**

PNC is the successor in interest by merger to RBC Bank (USA), which in turn was successor in interest to Florida Choice Bank. (See Exs. O, P, & Q to Compl.). On January 7, 2008, Nalid, as borrower, executed a promissory note in the principal amount of $554,000.00 in exchange for a loan from Florida Choice. (Ex. B to Compl.). The note

---

[1] The pertinent filings are PNC's Motion for Final Summary Judgment (Doc. 31) and Defendants' Memorandum of Law in Opposition (Doc. 33). PNC has not filed a reply, though a reply is permitted by the Case Management and Scheduling Order, (see Doc. 23 at 6).

bears a maturity date of January 7, 2009. (Id.). Also on January 7, 2008, Nalid executed a mortgage (Ex. C to Compl.), an Assignment of Rents (Ex. D to Compl.), a Business Loan Agreement (Ex. E to Compl.), and a Notice of Final Agreement (Ex. F to Compl.). The mortgaged property that secures the loan is located in Kissimmee, Florida, and on January 11, 2008, a UCC Financing Statement was filed in the Florida Secured Transaction Registry, evidencing Florida Choice's security interest in designated personal property of Nalid. (Ex. G to Compl.).[2]

On May 20, 2009, the individual Defendants executed Commercial Guaranty Agreements in favor of PNC. (Exs. I, J, K, & L to Compl.). On August 24, 2010, Nalid executed a "Change in Terms Agreement," extending the maturity date of the January 7, 2008 note to August 7, 2011,[3] and noting a remaining principal amount of $517,066.76. (Ex. M to Compl.). In July 2012 and January 2013, PNC sent three demand letters to Nalid and the individual Defendants, asserting that the loan was in default because the note had matured[4] but the final balloon payment had not been made and because property taxes for 2010, 2011, and 2012 taxes had not been paid. (Composite Ex. N to Compl.).

PNC filed this lawsuit in April 2013. In the Verified Complaint (Doc. 1), PNC brings

---

[2] The UCC Financing Statement was filed in the public records of Osceola County on January 8, 2008. (See Ex. H to Compl.).

[3] As earlier stated, the note's original maturity date was January 7, 2009. (Ex. B to Compl.). The Court has not been provided with any evidence or assertion of a written extension of the maturity date prior to the August 2010 Change in Terms Agreement.

[4] In the Complaint and in the demand letters, PNC asserts a maturity date of November 5, 2011. (See Compl. & Composite Ex. N thereto). It is not clear to the Court why PNC alleges November 5, 2011 as the maturity date. The Change in Terms Agreement extended the maturity date to August 7, 2011—not November 5, 2011. (See Ex. M to Compl). In their opposition memorandum, Defendants assert that PNC's reference to the November 5, 2011 maturity date is incorrect, noting the August 7, 2011 date stated in the Change of Terms Agreement. (See Doc. 33 at 3 n.1).

seven counts: suit on the first obligation (the loan) against Nalid (Count I); suit on a guaranty against Antonio L. Romano (Count II); suit on a guaranty against Gregory A. Wright (Count III); suit on a guaranty against Lidia Romano (Count IV); suit on a guaranty against Nancy Wright (Count V); foreclosure of mortgaged property (Count VI); and replevin of personal property (Count VII). PNC now seeks summary judgment on all counts.

Along with its motion, PNC has submitted an "Affidavit as to Amounts Due and Owing" signed by its Senior Vice President/Market Manager, Denise Schornack. (Doc. 31-1). Ms. Schornack attests that the note is in default due to failure to make full payment at the time of maturity on November 5, 2011, and due to failure to pay ad valorem taxes on the property for 2010, 2011, and 2012. (Id. ¶ 7[5]). Further, Ms. Schornack states that as of December 13, 2013, the total amount owed was $588,233.26, which represents the sum of: $467,822.44 in principal; $62,251.89 in accrued interest (at $77.97 per diem); $25,903.05 in late charges; and $32,255.88 for ad valorem taxes paid for 2010-2012. (Id. ¶ 8).

Also in support of its motion, PNC has submitted Defendants' Response to Requests for Admissions. (Doc. 32-1). In that Response, Defendants admit that the loan documents are authentic, (id. ¶ 1); that the note was not paid in full on November 5, 2011, (id. ¶ 4); and that the Defendants failed to pay all assessed ad valorem taxes on the property, (id. ¶ 5). Also in that Response, however, Defendants deny "that the Loan Documents represent the complete agreement of the parties," (id. ¶ 1), and deny that they

---

[5] The affidavit contains two paragraphs numbered "7." The citation in the text is to the first of these two paragraphs.

3

were obligated to pay the note in full on November 5, 2011, (id. ¶ 5).

The only evidence Defendants have submitted with their opposition memorandum is the Affidavit of Defendant Gregory Wright. (Doc. 33-1). In that affidavit, Mr. Wright states that before and after the January 2008 closing of the loan, representatives of Florida Choice "orally committed to construction financing for improvements to the property" and that "[t]he defendants relied upon such representations . . . in preparation of architectural and other development plans, a typographical [sic] survey, and in continuing to hold title to the property (rather than putting the property on the market) while awaiting the said construction loan." (Id. ¶ 3). Mr. Wright also recounts that arrangements for construction financing were interrupted by the merger of Florida Choice into RBC in March 2008, by the loan officer with whom they dealt leaving Florida Choice for other employment, and by RBC "appear[ing] to lose interest in construction loan financing as a line of business." (Id. ¶ 4).

Mr. Wright further states that the August 2010 extension of the loan maturity to August 7, 2011, was "made with the mutual expectation that the maturity date would be further extended in the ordinary course of business as reasonably necessary to facilitate development of the property." (Id. ¶ 5). Additionally, Mr. Wright states that PNC's predecessor, RBC, "continued to generate invoices subsequent to maturity through November 2011, all of which invoices were paid." (Id.) According to Mr. Wright, "[w]ithout such invoices [beyond that date], it was impossible to continue to remit monthly installment payments." (Id.). Further, the "plans with RBC" were interrupted by the merger of RBC into PNC in March 2012. (Id.).

II. **Summary Judgment Standards**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

4

of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, when faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." Sawyer v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" Sawyer, 243 F. Supp. 2d at 1262 (quoting Anderson, 477 U.S. at 251-52); see also LaRoche v. Denny's, Inc., 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

III. Discussion

The Defendants do not dispute that the loan was made or that it has not been repaid. Thus, the basic elements of breach of promissory note and breach of guaranty have been

5

established. Nevertheless, Defendants contend that summary judgment should not be granted in favor of PNC, arguing that genuine disputes of material fact remain as to their affirmative defenses. Defendants' position is without merit.

The only evidence submitted by Defendants—the affidavit of Mr. Wright—fails to establish the existence of disputes of fact regarding the merits of Defendants' affirmative defenses. Defendants assert that modifications to the loan—including the extension of the maturity date from August 2010 to August 2011—"were made with the mutual expectation that the maturity date would be further extended." (Doc. 33 at 3). However, Defendants do not identify any actual further extensions or assert that any further extension was in fact made. Defendants also do not dispute that they did not pay the taxes on the property as required by the promissory note.

Defendants also contend that Nalid relied upon a commitment from Florida Choice to provide construction financing after the land was acquired in 2008, but this alleged reliance does not amount to a defense to nonpayment of the note or guaranties. Mr. Wright attests to an oral commitment by Florida Choice to provide construction financing, (Wright Aff. ¶ 3), but to the extent that commitment was made before the time of the loan, evidence of it is barred by the parol evidence rule[6] and by the terms of the loan documents themselves. (See Notice of Final Agreement, Doc. 1-6 (providing that "by signing this document each party represents and agrees that: (A) the written loan agreement

---

[6] PNC argues in its motion that section 687.0304, Florida Statutes—known as the "banking statute of frauds"—precludes Defendants from relying on an unwritten agreement. Defendants correctly respond that that statute bars only affirmative claims for damages by a debtor—not affirmative defenses. See, e.g., Pavolini v. Williams, 915 So. 2d 251, 254 (Fla. 5th DCA 2005) ("It is clear that this statute does not apply to affirmative defenses."). Defendants' position nevertheless fails for the reasons stated in the text.

6

represents the final agreement between the parties, (B) there are no unwritten oral agreements between the parties, and (C) the written loan agreement may not be contradicted by evidence of any prior, contemporaneous, or subsequent oral agreements or understandings of the parties")). Moreover, to the extent such a commitment was made after the date of the loan, it would not excuse nonpayment even if did not also conflict with the terms of the loan documents. Cf. Builder's Bank v. Beach 116-23 LLC, No. 09-CV-2220(CBA)(RER), 2011 WL 2672567, at *5 (E.D.N.Y. Apr. 15, 2011) ("[N]either the Mortgage Agreement nor the Note obligated the Bank to extend a second loan to defendants. The Bank's failure to do so provides no basis to excuse the defendants' default."). Defendants' assertions of "additional consideration" in the form of development work and "forbearance . . . from abandoning development and reselling the property," (Doc. 33 at 5), likewise fall short.

Defendants also generally assert that the banks acted with "unclean hands," but the actions of the banks that have been described to the Court do not amount to such conduct. Defendants' argument that the banks "completely frustrated Nalid's ability to develop the Property" is rejected. In sum, Defendants have not presented evidence of a binding commitment by PNC or its predecessors to provide construction financing, and Defendants have not raised a genuine dispute of fact as to a viable defense to nonpayment. PNC's motion for summary judgment is thus due to be granted as to all seven counts of the Complaint.

IV.  **Conclusion**

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. The Motion for Final Summary Judgment (Doc. 31) filed by PNC Bank, N.A., is **GRANTED** as to all counts of the Complaint (Doc. 1).

2. PNC Bank, N.A., shall submit a proposed order consistent with this ruling and with the relief sought in the seven counts of the Complaint **on or before Monday, May 12, 2014**. Such proposed order shall include an updated interest computation through May 14, 2014, and shall be both filed in the electronic record and emailed to the chambers of the undersigned in accordance with the Middle District of Florida Administrative Procedures for Electronic Filing.

3. This case is removed from the Court's trial calendar.

**DONE** and **ORDERED** in Orlando, Florida, on May __, 2014.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record